# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|                                          |   |                        |
|------------------------------------------|---|------------------------|
| RICHARD STRAHAN,                         | ) |                        |
|                                          | ) |                        |
| Plaintiff,                               | ) |                        |
|                                          | ) | Civil Action No.       |
| v.                                       | ) | 15-12277-FDS           |
|                                          | ) |                        |
| AT&T MOBILITY LLC and                    | ) |                        |
| CAMBRIDGESIDE GALLERIA,                  | ) |                        |
|                                          | ) |                        |
| Defendants.                              | ) |                        |

## MEMORANDUM AND ORDER
## ON DEFENDANT'S MOTION TO DISMISS
## AND PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

**SAYLOR, J.**

This action arises out of an incident at an AT&T store in Cambridge, Massachusetts, at the Cambridgeside Galleria. Plaintiff Richard Strahan, who is proceeding *pro se*, alleges that when he went into the AT&T store to pay his wireless phone bill, an employee called security. Off-duty Cambridge police officers employed by the Galleria arrested him for trespass.[1] The state trial court ultimately dismissed the trespass charge for lack of probable cause. Strahan now appears to assert a claim against the Galleria under 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments.

The Galleria has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for

---

[1] The amended complaint veers back and forth between suggesting that (1) the officers were off-duty and employed by Cambridgeside Galleria and (2) the officers were on-duty. Because the plaintiff is proceeding *pro se*, the Court will read the complaint very liberally, and assume the officers were in fact off-duty officers working as security guards. (If they were on-duty officers, the Galleria would have no responsibility for their actions.) In addition, the proposed Second Amended Complaint clarifies the allegation that the officers were off-duty officers acting as Galleria security guards.

failure to state a claim and Fed. R. Civ. P. 8(a) for failure to provide a short and plain statement of the claim. Strahan, in turn, has filed a motion to amend the complaint. For the following reasons, the motion to dismiss will be granted and the motion to amend will be denied.

I.  **Background**

   A.  **Factual Background**

The following facts are as stated in the first amended complaint.

In June 2012, Richard Strahan had a written contract with AT&T Mobility LLC for cell-phone services. (Am. Compl. ¶ 29). The contract permitted him to access AT&T stores during their regular business hours to receive services from AT&T employees and make payments. (*Id.*).

On June 8, 2012, Strahan visited the AT&T store at the Galleria to pay his bill. (*Id.* at ¶ 30). He alleges that he attempted to make his payment in cash at an automated machine toward the rear of the store when Leon Lashley, an off-duty Cambridge police officer employed as a Galleria security guard, approached him. (*Id.* at ¶ 31). Lashley ordered Strahan to leave the store, and he complied. (*Id.*). Strahan contends that neither Lashley nor any AT&T employee warned him that he would be arrested for trespass if he returned. (*Id.* at ¶ 32).

On June 15, 2012, Strahan returned to the Galleria AT&T store to pay his bill. (*Id*. at ¶ 1). According to the complaint, when he entered the store, "[d]isgruntled AT&T employees refused his peaceful offer to pay his bill and called the Cambridge Police . . . to physically remove him from the store." (*Id.*). He then left the store, but was confronted by Thomas Glynn, another off-duty Cambridge police officer employed as security by the Galleria. (*Id.* at ¶ 35). Strahan attempted to record the encounter with Glynn by video. (*Id.*). Eventually, a second security officer, Raymond Pina, approached him. (*Id.* at ¶ 36).

Strahan was subsequently arrested for trespassing by Glynn and Pina. (*Id.* at ¶¶ 2, 8, 38). While handcuffed, he was forced against the wall by Pina. (*Id.* at ¶ 39). He was then held at the Cambridge police station until bail was posted. (*Id.* at ¶ 40). The criminal trespass charge against him was later dismissed by the Cambridge District Court for lack of probable cause. (*Id.* at ¶¶ 2, 41).

B.  **Procedural Background**

Strahan filed the original complaint in this action on June 8, 2015, asserting claims against Officers Lashley, Glynn, and Pina. On September 20, 2016, he filed an amended complaint adding claims against, among others, AT&T and the Galleria. He subsequently stipulated to the dismissal of his claims against several defendants on November 2, 2016, leaving only the Galleria and AT&T.[2] The Galleria has now moved to dismiss the complaint.

On June 19, 2017, Strahan moved to amend the complaint to clarify his claims against the Galleria under § 1983, and to add state-law claims for intentional infliction of emotional distress, false arrest, and malicious prosecution.

II. **Defendant's Motion to Dismiss Under Rule 12(b)(6)**

A.  **Legal Standard**

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the

---

[2] AT&T moved to compel arbitration and for a stay of the claims against it, which the Court granted.

3

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, while *pro se* complaints "are accorded 'an extra degree of solicitude' . . . even a *pro se* plaintiff is required to 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (quoting *Adams v. Stephenson*, 1997 WL 351633, at *1 (1st Cir. June 23, 1997)).

### B. <u>Analysis</u>

To prevail on a claim under § 1983, the plaintiff must show "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995) (quoting *Chongris v. Board of Appeals*, 811 F.2d 36, 40 (1st Cir.

1987)).

Here, Strahan's claims turn on whether defendant acted under color of state law. The Galleria is a private company, and the security officers in question were off-duty Cambridge police officers employed by the company. The Supreme Court has recognized three tests for determining whether a private party's actions may be deemed to have occurred under the color of state law: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship ("nexus") test. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 939 (1982); *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18 (1st Cir. 1998).

### 1. Public-Function Test

Under the public-function test, a "private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). The "public function analysis is designed to flush out a State's attempt to evade its responsibilities by delegating them to private entities." *Perkins*, 196 F.3d at 18-19. However, the public-function test "has been interpreted narrowly." *Chapman*, 319 F.3d at 833. Only functions such as holding elections, exercising eminent domain, and operating company-owned municipalities have been found to qualify as state actions under this test. *See Chapman¸* 319 F.3d at 833-34; *United Auto Workers v. Gaston Festivals, Inc.*, 43 F.3d 902, 907 (4th Cir. 1995).

Mere performance of basic private-security functions, without more, does not implicate an exclusive public function. *Chapman¸* 319 F.3d at 834 (citing *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1457 (10th Cir. 1995); *White v. Scrivner Corp.*, 594 F.2d 140, 142-43 (5th Cir. 1979)). Although Strahan contends he was arrested by defendant's security personnel for trespass, the power to arrest has never been

5

reserved exclusively to the state. *Wade*, 83 F.3d at 906. Such power is often granted to "security guards . . . employed by private companies to protect private property." *Id.* Therefore, under the public-function test, defendant was not a state actor.

### 2. State-Compulsion Test

Under the state-compulsion test, if the state "has exercised coercive power or has provided . . . significant encouragement, either overt or covert, . . . the [challenged conduct] must in law be deemed to be that of the State." *Klunder v. Brown Univ.*, 778 F.3d 24, 30 (1st Cir. 2015) (quoting *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005) (alteration in original)). The First Circuit has held that a private doctor was a state actor when he conscripted by the police to search a suspect's private areas pursuant to a warrant. *Rodrigues v. Furtado*, 950 F.2d 805, 814 (1st Cir. 1991). *See Sanchez v. Pereira-Castillo*, 590 F.3d 31, 52 (1st Cir. 2009) (holding that a private doctor could be considered a state actor when she acted at the behest of correctional officers and staff).

Here, the complaint fails to raise a plausible inference that the state itself exercised coercive power, or provided significant encouragement, or indeed was meaningfully involved at all in the alleged civil-rights violations. Rather, Strahan himself contends that the security guards, AT&T, and the Galleria "act[ed] in concert to violate the Civil Rights Act and the 14th Amendment." (Am. Compl. ¶ 3).

### 3. Nexus Test

Under the nexus test, a private party may be deemed a state actor if the "totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]." *Klunder*, 778 F.3d at 31 (quoting *Estades-Negroni*, 412 F.3d at 5 (alterations in original)). "The inquiry is

6

fact-specific, and the presence of state action is determined on a case-by-case basis." *Chapman*, 319 F.3d at 834 (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)).

Under some circumstances, off-duty officers may be deemed to have acted under color of state law when working as private security guards. For example, in *Chapman*, the Sixth Circuit applied the nexus test and concluded that the defendant employer could be liable under § 1983. In that case, although the guard "did not represent himself as a police officer" or threaten arrest, he was wearing his official police uniform, badge, and sidearm. *Chapman*, 319 F.3d at 834-35. In addition, the guard conducted a strip-search in contravention to company policy, which mandated police intervention in such situations. *Id.* at 835. Under the circumstances, the court found that there were sufficient facts whereupon a "reasonable jury could find the detention was . . . fairly attributable to the state." *Id.* Similarly, in *Groom v. Safeway, Inc.*, 973 F. Supp. 987, 991 (W.D. Wash. 1997), a district court found that the store employing an off-duty officer as a security guard "hired an instrument of the state's power" when the officer wore his uniform, badge, and gun while patrolling the store.

By contrast, the complaint here fails to plead any facts that plausibly support the inference that defendant was a state actor under the nexus test. The complaint does not allege that defendant had a policy requiring calling on-duty police officers to conduct a trespass arrest. Nor does it allege that Officers Lashley, Glynn, or Pina represented themselves as Cambridge police officers or anything other than mall-security personnel. Instead, Strahan contends that because defendant employed those officers as "paid security guards in its service," it "became a state actor." (Am. Compl. ¶ 8). That is a "conclusory statement" that the Court need not accept, and it is certainly not sufficient to satisfy the "nexus" test. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Accordingly, because the complaint fails to set forth factual allegations establishing the material elements necessary to establish a claim against the Galleria under § 1983, the motion to dismiss will be granted.

## III.     Defendant's Motion to Dismiss Under Rule 8(a)

Rule 8 requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At a minimum, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006) (quotations omitted). "This means that . . . the statement of [the] claim must at least set forth minimal facts as to who did what to whom, when, where, and why." *Id.* (quotations omitted). Although the requirements of Rule 8(a)(2) are minimal, "minimal requirements are not tantamount to nonexistent requirements." *Id.* (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)). Even pro se plaintiffs are required to comply with procedural and substantive law. *See Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

Moreover, under Rule 8, a plaintiff must plead more than a mere allegation that the defendant harmed him. *Ashcroft*, 556 U.S. at 678 (detailed factual allegations are not required under Rule 8, but a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." quoting *Twombly*, 550 U.S. at 555). *See Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal citation and quotation marks omitted).

As pleaded, the amended complaint fails to comport with the pleading requirements of Rule 8. Although the complaint is of considerable length, constituting 23 pages, even a lenient reading fails to disclose any cognizable claims against defendant. The complaint alleges ten

counts brought against various parties, including the City of Cambridge, former Cambridge police commissioner Christopher Burke, AT&T, and Officers Lashley, Glynn, and Pina. (Am. Compl. ¶¶ 47-73).[3] None are explicitly brought against the Galleria. *See Bagheri v. Galligan*, 2005 WL 3536555, at *1 (1st Cir. Dec. 28, 2005) (finding complaint deficient because, among other things, it failed to state clearly which defendant or defendants committed each of the alleged wrongful acts). *See also Decarvalho v. Telford*, 2017 WL 3668411, at *2 (D. Mass. Aug. 24, 2017); *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir. 1982)). In addition, the complaint fails to provide sufficient factual information to set forth any plausible claim upon which relief can be granted. Because the complaint fails to give defendant a ". . . meaningful opportunity to mount a defense," *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 123 (1st Cir. 2004) (quoting *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995), it does not comport with Rule 8, and the motion to dismiss will be granted on that basis as well.

## IV.     Plaintiff's Motion to Amend

Under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint shall be "freely give[n] . . . when justice so requires." However, courts have discretion to deny leave to amend for several reasons, including "futility of amendment" and untimeliness. *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (finding that a motion for leave to amend should be denied when it is characterized by "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

---

[3] The complaint has three separate counts titled "Count VIII."

When considering an opposition to a motion to amend on the ground of futility, courts must apply the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). Whether a proposed amended complaint would survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard set forth in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544.

In addition, a party seeking to amend a complaint after the deadline set forth in a scheduling order must demonstrate "good cause" for the delay. *See O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004). The reason for the heightened standard under Rule 16 as compared with Rule 15 is to "preserve[ ] the integrity and effectiveness of Rule 16(b) scheduling orders." *Id.* at 155. In analyzing the plaintiff's reasons for delay, the Court must "focus[ ] on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004); *see also O'Connell*, 357 F.3d at 155. ("Prejudice to the opposing party remains relevant but is not the dominant criterion.").

Defendant contends that the motion to amend should be denied on grounds of futility and undue delay.

### A. <u>Futility</u>

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). The court must review a proposed amended complaint for futility under the "standard [that] applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006).

10

The proposed second amended complaint is substantially similar to the first amended complaint. It clarifies that Officers Lashley, Glynn, and Pina were employed by the Galleria in June 2012, and adds several state-law tort claims, including intentional infliction of emotional distress, false arrest, and malicious prosecution. However, it otherwise fails to cure the fatal defects with the § 1983 claims. The proposed amended complaint does not contain additional factual allegations that would suggest that the Galleria acted under color of state law. Furthermore, in the absence of a federal claim, and where the parties are not diverse, the Court would not have jurisdiction over the proposed state-law claims. Therefore, the motion to amend the complaint will be denied as futile because it would fail to state a claim on which relief can be granted.

### B. Undue Delay

Although plaintiff contends that defendant will incur no prejudice because discovery has not occurred yet, the principal issue is plaintiff's lack of diligence, not defendant's lack of prejudice. *Steir*, 383 F.3d at 12. The original complaint was filed more than two years ago, in June 2015. After some initial delays, the Court issued a scheduling order establishing a deadline of September 8, 2016, for motions to amend the pleadings. In light of his *pro se* status, this Court then granted plaintiff an opportunity to amend the complaint on September 20, 2016. However, plaintiff moved to amend the complaint a second time on June 19, 2017, and provided the Court with the proposed amended complaint on August 1, 2017. That motion came nine months after the scheduling-order deadline for amendments to the pleadings. Plaintiff moved to amend the complaint again only after defendant AT&T moved to compel arbitration. He has not offered a rationale to justify the delay, other than to reiterate that all claims in his complaint were brought against defendants AT&T and Cambridgeside Galleria. There has been no material

11

change in the facts, and there is no apparent reason why the allegations could not have been included in the original complaint. That is insufficient to establish the good cause required under Rule 16.

## V. Conclusion

For the reasons stated above, defendant's motion to dismiss the complaint is GRANTED and plaintiff's motion to amend the complaint is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: September 13, 2017